UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re American Express Anti-Steering Rules           11-CV-2221 (NGG) (RER)
Antitrust Litigation (NO II)
                                                     **SUMMARY ORDER**

------------------------------------------------------------X

**RAMON E. REYES, JR., United States Magistrate Judge:**

  Before the Court is American Express's ("Amex's") motion to preclude the Merchant Plaintiffs from sharing information designated as "Confidential" and "Highly Confidential" with a payment service industry consultant pursuant to paragraph 13(c) of the parties' May 22, 2009 Stipulation and Protective Order ("Protective Order"). The Merchant Plaintiffs oppose the motion, arguing that the Protective Order permits them to share such information with its retained consultant and that the circumstances here warrant disclosure. (Dkt. No. 232.) Having read the parties' letter-brief submissions, reviewed their accompanying exhibits, and heard oral argument, the Court hereby denies Amex's motion.

## BACKGROUND[1]

  On April 7, 2011, the Court endorsed the parties' mutually agreed upon Protective Order.[2] (Dkt. No. 102.) The Protective Order governs the disclosure of confidential information and establishes a specific procedure for sharing such information with consultants who are "Industry Participant[s]." On February 14, 2013, the Merchant Plaintiffs informed Amex that it intended to

---

[1] The facts of this dispute and the parties' arguments are laid out at length in their respective submissions and the transcript of the March 8, 2013 oral argument. (Dkt. Nos. 231, 232, 236.)

[2] The operative Protective Order is discussed at greater length in the Court's November 16, 2012 summary order. (10-cv-04496 (NGG) (RER), Dkt. No. 252 ("November Order").)

disclose confidential information to an Industry Participant, consultant John Gove. (Dkt. No. 231, Exh. 1.) Gove is a director at TransAction Resources ("TransAction"), a firm that assists merchant clients with payment card strategies, who has more than twenty years experience in the financial services and payment industry. (Dkt. No. 231, Exh. 2 at 1, Exh. 3 at 1.) Gove's former clients include large Australian merchants such as Coles Group, Woolworths, and Qantas. (Dkt. No. 231, Exh. 3 at 1.) After conferring with the Merchant Plainitffs pursuant to the Protective Order, Amex filed the present motion to preclude plaintiffs from sharing confidential information with Gove on March 1, 2013.

## ANALYSIS

Here, as in the November Order, where the release of confidential information to a third party consultant is governed by a protective order, the Court will consider the competing interests of the parties as to the dissemination and use of this sensitive information. *See BASF Corp. v. United States*, 321 F. Supp. 2d 1373, 1378 (C.I.T. 2004). Specifically, the Court will "balance [a party's] interest in selecting the consultant most beneficial to its case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors." *Id.* The Court finds that Gove is a third party consultant governed by a protective order as contemplated by the case law, and thus will apply this balancing test.

As to Amex's interest in protecting its confidential information, Amex is particularly concerned about Gove's participation in the case because his firm advises many of Australia's "largest merchants." (Dkt. No. 231 at 1.) Amex maintains that Gove, a consultant "on the other side of the table" in sensitive pricing negotiations, should not review Amex's "sensitive, internal

confidential information." (Tr. 6:11-21; Dkt. No 231 at 2.) For instance, Amex fears Gove could discover its pricing "walkaway position" and store this sensitive information for future negotiations. (Tr. at 7:8-18.) Additionally, Amex argues that Gove does not need access to its confidential information to provide an overview of the Australian payments card market. (Dkt. No. 231, at 2.)

The Court must, however, also consider the Merchant Plaintiffs' right to select their own expert, one who has "extensive experience" with the merchant payment issues at the core of this case. (Dkt. No. 232, at 3.) The Merchant Plaintiffs contend that an expert with more than twenty years experience in the payments industry is "precisely" the person they need – first to assist with depositions and reports, and later to assist the jury at trial. (*Id.*) And as with Ann Schmitt, the Merchant Plaintiffs represent that Gove agrees to be bound by the Protective Order and face sanctions for any misuse of protected information. (*Id*; November Order at 4.) Finally, the Merchant Plaintiffs argue that Gove must have access to Amex's confidential information in order to assist their understanding of an array of Australian merchant payment issues.

After balancing these competing interests, the Court finds that the Merchant Plaintiffs' strong interest in retaining a consultant with appropriate industry expertise, and providing this individual with the information necessary for him to effectively provide litigation support and expert testimony at trial, outweighs Amex's legitimate concern about misuse of confidential information in future merchant negotiations. First, the parties' heavily-negotiated Protective Order guards against such disclosure risks and provides sanctions for any misuse of protected information. Second, Gove is similar to Schmitt in that he also advises merchant clients who sit "on the other sides of the table" from Amex. And as with Schmitt, Gove is not currently engaged

by any Australian merchants for price negotiation consultancy, and thus any risk of future disclosure is speculative at best. (Tr. 15:17-25; Tr. 23:13-18.) Third, because Gove has been retained to assist the Merchant Plaintiffs throughout the remainder of discovery and also at trial, he will need access to Amex's protected information to provide effective litigation support in his area of specific expertise.

Finally, and as was also the case with Schmitt, the Merchant Plaintiffs acknowledge that they do not anticipate providing Gove "unfettered access" to all of Amex's confidential information. (Tr. 20:5-14; Dkt. No. 232 at 2.) Rather, Gove will review only a select subset of the protected information – documents that are at least two years old. (Dkt. No. 232 at 2; Tr. 19:24-20:4.) Since Gove will not have unrestricted access to Amex's millions of confidential-designated documents, it is not certain that he will encounter pricing information that could prove detrimental to Amex in future negotiations with Australian merchants.

Thus, the Court finds that Amex's interest in protecting its confidential information is outweighed by the Merchant Plaintiffs' interest in retaining Gove as a consulting expert. Accordingly, Amex's motion to preclude is denied and the Merchant Plaintiffs are permitted to share certain confidential information with Gove solely for the purposes of this litigation, provided he complies with all directives and restrictions in the Protective Order.

**SO ORDERED.**

**Dated: April 1, 2013**
  **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**RAMON E. REYES, JR.**
**United States Magistrate Judge**