# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

January 31, 2014

**VIA ECF**
Honorable Nicholas G. Garaufis
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY  11201

In re American Express Anti-Steering Rules Antitrust Litig. (No. II), 11-MDL-2221
The Marcus Corporation v. American Express, 13-CV-07355

Dear Judge Garaufis:

American Express respectfully submits this response to the Individual Merchant Plaintiffs' January 24, 2014, letter objecting to entry by the Court of the preliminary approval orders contemplated by the settlement agreement.  We respectfully request that the Court reject the Individual Merchant Plaintiffs' objection, preliminarily approve the settlement, and enter the proposed Preliminary Approval Orders including their temporary injunction against all injunctive claims and implementing the notice and approval process called for by those orders.  Allowing any further consideration of injunctive claims pending final approval will destroy the essence of the settlement agreement and result in its termination.

The settlement agreement between American Express and the Class Plaintiffs calls for American Express to alter its contracts to permit surcharging under certain circumstances that, according to Class Plaintiffs, will "unlock" the relief approved by Judge Gleeson in MDL 1720.  In exchange, and only if the settlement receives final approval, American Express will be released from all injunctive relief claims challenging its non-discrimination provisions for a minimum of ten years.  That exchange is the centerpiece of the settlement, requires certification of a Rule 23(b)(2), non-opt-out class, and would specifically bind all merchants in the United States that accept American Express cards.

The issue currently before the Court is whether entry of the Preliminary Approval Order will enjoin all members of the class—including the Individual Merchant Plaintiffs—from proceeding with injunctive challenges to the American Express nondiscrimination provisions during the period between preliminary approval and the Court's decision on final approval (or termination of the settlement).  On this point, there is no disagreement between the Class Plaintiffs and American Express.  As set forth in their separate letter to the Court, the Class Plaintiffs explicitly agree that the Preliminary Approval Order requires entry of a temporary injunction as to all merchants, with no exceptions.

This temporary injunction is central to the settlement agreement.  Without it, American Express will not receive the benefit of its bargain and there is no agreement.  It makes no sense for American Express (or any other class action defendant) to agree to resolve a set of claims yet simultaneously be forced to try those claims.  Such an approach would turn Rule 23(b)(2) on its

head. If, as the Individual Merchant Plaintiffs demand, they (and others) can separately challenge American Express's nondiscrimination provisions and seek broader terms than the Rule 23(b)(2) settlement provides, no defendant would ever agree to class-wide injunctive relief. To do so would only invite other litigants to continue to pursue broader-based injunctions secure in the knowledge that they could do no worse than the class settlement. The settlement provides for uniform nondiscrimination provisions changes across all merchants. If the provisions are not uniformly applied to all merchants, or if some merchants are able to continue to pursue their injunctive relief claims, American Express will not receive the benefit of its bargain. Because it would deprive American Express of the benefit of its bargain, the adoption of the Individual Merchant Plaintiffs' "interpretation" of Paragraph 24, or any modification to the proposed order that would permit such an interpretation, would eliminate the core agreement embodied in the settlement and, accordingly, the settlement will have to be undone because American Express will have no choice but to exercise its termination rights.

Because the Class Plaintiffs and American Express agree on the meaning of Paragraph 24, the issue before the Court is not one of interpretation. Instead, the question is whether the Court should deny preliminary approval including the temporary injunction based upon the objections of the Individual Merchant Plaintiffs. We believe the answer is "no". Notably, the relief that the Individual Merchant Plaintiffs request of a hearing and opportunity to argue why the settlement is insufficient (January 24, 2014 letter from Richard Arnold to Judge Garaufis ("Jan. 24 Letter") at 11, option 3) is already expressly provided for in the Settlement Agreement and in class settlement approval procedures under the Federal Rules. As the Court knows, the purpose of granting preliminary approval, ordering notice to the class, setting a schedule for formal objections, and setting a final approval hearing where such objections may be heard is to allow all merchants, including the Individual Merchant Plaintiffs, a full and fair opportunity to exercise their due process rights to object to and oppose the final approval of the settlement. The Individual Merchant Plaintiffs' concerns are thus unfounded, their rights are protected, and there is no reason to delay preliminary approval.

We therefore respectfully request that the court grant preliminary approval (including the temporary injunction), order notice to the class and begin the process of receiving and addressing any and all objections to the proposed settlement (including any by the Individual Merchant Plaintiffs). In addition, as discussed below, we are compelled to note that, under Paragraph 62 of the agreement, American Express is required to exercise its right to terminate within 30 days of the Individual Merchant Plaintiffs objecting to the settlement (or risk a claim of waiver). In light of Mr. Arnold's objections on the record at the January 14, 2014, hearing, American Express is thus in the difficult position of having to terminate the agreement if Preliminary Approval is not either granted or denied by February 13th. Accordingly, we respectfully request that the Court rule on the preliminary approval motion no later than February 13, 2014.

I.      **Background.**

On December 19, 2013, after months of negotiations assisted by mediator Kenneth R. Feinberg, the Class Plaintiffs and American Express entered into the Class Settlement

Honorable Nicholas G. Garaufis
January 31, 2014
Page 3 of 9

Agreement.[1]  Among other consideration in the settlement, American Express will allow merchants to impose a surcharge on American Express credit and charge card transactions so long as (i) the amount of the surcharge does not exceed the discount rate applicable to that transaction and the amount of the surcharge that the merchant is permitted to impose on any other credit card brand, (ii) the surcharge is fully disclosed, on the same terms that the merchant is required to disclose Visa and MasterCard surcharges; and (iii) the merchant provides 30 days' notice to American Express that it intends to surcharge.  The settlement permits such surcharging even if the merchant does not surcharge debit, pre-paid, or gift cards.

      Class Plaintiffs have argued that the deal "represents some of the most consequential relief ever obtained in a private enforcement action under the U.S. antitrust laws" and that it benefits all merchants, including those that choose not to surcharge. (Class Plaintiffs' Brief in Support of Preliminary Approval (D.E. 306-1) at 2, 4-5.)  They also assert on behalf of the millions of merchants they represent that "the relief contained in this settlement will empower merchants, for the first time, to surcharge Visa, MasterCard and Discover credit card transacttions.  This settlement unlocks the value of the rules changes that merchants have wrung from all of those networks in recent years." (*Id.* at 6.)  Class Counsel likewise has argued that the settlement easily meets the low threshold of preliminary approval as within "the range of possible approval" and that they will show at final approval that "the relief here represents 'an indisputably procompetitive development that has the potential to alter the very core of the problem this lawsuit was brought to challenge.'" (*Id.* at 17-18, quoting MDL 1720 Approval Order at 31.)

      In exchange for this and other relief, upon Final Approval a Rule 23(b)(2) non-opt-out settlement class consisting of all merchants that accept American Express cards will release American Express from injunctive relief claims challenging its nondiscrimination provisions.  The Rule 23(b)(2) aspect of this settlement is critical:  American Express has bargained for uniformity and certainty as to its nondiscrimination provisions.  The very purpose of a Rule 23(b)(2) settlement is to establish such uniformity.  It would destroy the essence of the settlement agreement and be palpably unfair if some subset of the class were entitled to continue litigation to seek special treatment or special deals from American Express.  Without a Rule 23(b)(2) non-opt-out class, there simply can be no settlement agreement.

---

[1]    The Individual Merchant Plaintiffs persist (Jan. 24 Letter at 2, n.1) in a regrettable denial of their agreement to abide by whatever nondiscrimination provision changes the Class Plaintiffs negotiated with Amex while preserving the Individual Merchant Plaintiffs' rights to pursue their own damages claims.  That denial is simply untrue.  The Individual Merchant Plaintiffs also disingenuously suggest that American Express and the Class thereby contemplated a "carve-out for the Merchant Plaintiffs from the proposed settlement agreement" by including a right for American Express to terminate the agreement if the Individual Merchant Plaintiffs object.  (*Id.*)  The referenced termination right is no such thing, and no carve-out was *ever* contemplated.  American Express negotiated this termination right because, among other reasons, despite Mr. Arnold's clear statement, American Express could not be left without recourse pending final approval if the Individual Merchant Plaintiffs changed course, as they have now done.  That is a reason why American Express negotiated the right, at its election, to terminate the settlement upon an objection by the Individual Merchant Plaintiffs.

Honorable Nicholas G. Garaufis
January 31, 2014
Page 4 of 9

## II.     Absent an Injunction Pending Final Approval Proceedings, There is No Settlement.

As set forth below:  (1) if entered, the Preliminary Approval Order will enjoin the Individual Merchant Plaintiffs from proceeding with their injunctive claims pending final approval; (2) such temporary injunctions are necessary and typical in the context of a class settlement approval process; and (3) any contrary interpretation would destroy, and necessarily result in the immediate termination of, the settlement agreement.

First, the Settlement Agreement expressly provides that a necessary condition for the settlement to proceed is entry of a preliminary approval order that enjoins *all* members of the Settlement Class, pending either the Court's determination of whether the settlement agreement should finally be approved or the termination of the agreement, from challenging in *any* action or proceeding American Express's non-discrimination provisions (including their prohibitions on discriminatory surcharging and steering) other than in connection with the final approval process.  The proposed injunction does not bar claims for damages from proceeding.  That injunction is embodied in Paragraph 24 of the Preliminary Approval Order.  (See Paragraph 24 of Appendix D.)[2]  The language of Paragraph 24 is clear, and the fact that it will preclude the Individual Merchant Plaintiffs from proceeding with their injunctive claims is not in dispute, as reflected by the letter to be submitted by the Class Plaintiffs.[3]

Second, what the Individual Merchant Plaintiffs are asking for is the opportunity to enjoy the benefits of the relief negotiated by the Class Plaintiffs while still being allowed to press for further changes to the nondiscrimination provisions through continued litigation of the very claims that will be released upon Final Approval.  In other words, they want to have their cake (the class settlement) and eat it, too (by trying to get additional injunctive relief at trial).  That is not the deal American Express negotiated.  It defies logic even to suggest that American Express would agree to settle class-wide injunctive claims yet simultaneously agree to go to trial on exactly those same claims.

American Express relied upon the presence of the temporary injunction embodied in the preliminary approval order to ensure it receives the benefit of its bargain precisely because such injunctions are commonplace.  The authority to issue such an injunction pending final approval stems from the All Writs Act, 28 U.S.C. § 1651, in coordination with the exceptions under the Anti-Injunction Act, 28 U.S.C. § 2283.  As the Second Circuit has noted, utilization of the All Writs Act in the context of a settlement is appropriate.[4]  Such injunctions are regularly issued as

---

[2] *See also* Class Settlement Agreement ¶ 44(i) (requiring Class Counsel to file a motion seeking a preliminary approval order that contains, among other terms, an injunction as set forth in Paragraph 24); *id.* ¶ 42(g) (requiring a similar order in the Marcus Action); *id.* ¶ 43(g) (same); *id.* Appendix B, ¶ 12 (Marcus Preliminary Approval Order); and *id.* Appendix C, ¶ 16 (same).

[3] Notably, in their 12 page letter, the Individual Merchant Plaintiffs never once even suggest how any other reading of Paragraph 24 is even plausible.

[4] *See, e.g., In re Baldwin-United Corp.*, 770 F.2d 328, 337-39 (2d Cir. 1985) (affirming injunction of state court actions under the All Writs Act in aid of the district court's jurisdiction to oversee preliminarily approved settlement and ongoing settlement discussions); *In re Joint E.*

part of the preliminary approval order itself.[5] Further, as discussed below, just such an injunction was entered in MDL 1720 by Judge Gleeson to preserve his ability to oversee the approval process of the settlement with Visa and MasterCard.

Third, as set forth in Paragraph 61 of the Class Settlement Agreement, American Express (or Class Plaintiffs) may terminate the settlement if "any condition for the Settlement Preliminary Approval Date is not satisfied." The "Settlement Preliminary Approval Date" is defined in Paragraph 1(bbb) to mean the date by which, among other conditions, "the Court has entered the Class Settlement Preliminary Approval Orders without material modification from the forms of the attached . . . Appendix D," "including without any modification of the provisional certification for the purposes of settlement of the Settlement Class (from which exclusions are not permitted)." Under these provisions, if the Court were to adopt the Individual Merchant Plaintiffs' unsupported construction of Paragraph 24, that would be contrary to the express intent of American Express and the Class Plaintiffs, as expressed in the terms and plain language of the settlement agreement, deprive American Express of the benefit of its bargain, be a material modification to the proposed preliminary injunction order, and leave American Express with no alternative but to immediately exercise its rights to terminate the settlement.

## III. The Individual Merchant Plaintiffs' Objection Cannot Preclude Preliminary Approval.

A settlement is just that—a settlement, not an unqualified victory. The Individual Merchant Plaintiffs have previously understood this fact. As they told Judge Gleeson in urging him to adopt the "rule reforms" in MDL 1720, "The questions for the Court in evaluating the Class Settlement are whether the negotiated reforms are the best appropriate solution to the Class antitrust litigation or is there too much that could be accomplished in the litigation that is being

---

& S. Dist. Asbestos Litig., 134 F.R.D. 32, 37 (E.D.N.Y. & S.D.N.Y. 1990) (same); *Achtman v. Kirby, McInerney & Squires, LLP*, 404 F. Supp. 2d 540, 545 (S.D.N.Y. 2005) *aff'd sub nom. Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006) (enjoining malpractice action when two settlements in the underlying action had been finalized and another was expected shortly because the action posed a threat to court's continuing jurisdiction).

[5] *See, e.g., Authors Guild v. Google Inc.*, No. 05-cv-8136, 2009 WL 5576331 at *5 (S.D.N.Y. Nov. 19, 2009) (Chin, J.) (enjoining class members, pending final approval, from "commencing or prosecuting any action or proceeding asserting any claims whatever on behalf of themselves or the Amended Settlement Class against Google that were or could have been brought in the Third Amended Class Action Complaint, and that relate to or arise out of the claims as described in that complaint"); *Denney v. Jenkens & Gilchrist*, 03-cv-5460, 2004 WL 1197251, at *10 (S.D.N.Y. May 19, 2004) (granting broad anti-suit injunction where defendants bargained for such injunction in the settlement and court noted likelihood that settlement would be terminated in its absence); *In re WorldCom, Inc. v. Sec.*, No. 02-cv-3288, 2005 WL 78807, at *3 (S.D.N.Y. Jan. 11, 2005) ("Prosecution by any Class Member of any action or claim that is subject to the release and dismissal contemplated by the Settlement is hereby enjoined."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 697 (D. Colo. 2006) (same); *In re Zurn Pex Plumbing Prods. Liab. Litig.,* No. 08-MDL-1958, 2012 WL 5055810, at *14 (D. Minn. Oct. 18, 2012) (same).

Honorable Nicholas G. Garaufis
January 31, 2014
Page 6 of 9

left undone by the settlement?" (Individual Plaintiffs' Memorandum in Support of the Settlement Reforms, No. 05-MD-1720 (E.D.N.Y.) (D.E. 5934) at 3.) Yet here, the Individual Merchant Plaintiffs are arguing *at the preliminary approval stage* that the proposed relief is insufficient because it does not give them everything they would obtain if they were to win their case at trial. To the extent they have objections to the sufficiency of the relief negotiated by the Class Plaintiffs, those objections must be presented in the context of the *final* approval process. They do not—and cannot—provide a basis to derail a settlement that Class Plaintiffs believe will provide tremendous value to the class before it even gets out of the gate.

The standard for preliminary approval is low. *See Allen v. Dairy Farmers of America, Inc.*, No. 09-cv-230, 2011 U.S. Dist. LEXIS 48479, at *10, 13 (D. Vt. May 4, 2011) (preliminary approval is "at most a determination that there is what might be termed probable cause to submit the proposal to class members"; the approval standard is a "relatively low threshold") (internal quotations omitted) (cited by Individual Merchant Plaintiffs at page 6). That is because the entire purpose of granting preliminary approval is to freeze the status quo and ensure that all members of the settlement class receive notice of the proposed terms so they can exercise their right to be heard. It is only *after* that notice process that the Court can provide all members of the class (including the Individual Merchant Plaintiffs) with exactly the forum that Mr. Arnold seeks: "a hearing on whether it is fair and reasonable in the context of this litigation to certify a Rule 23(b)(2) class without any opt-out rights." (Jan. 24 Letter at 11.) None of Mr. Arnold's arguments supports the notion that the Court should dispense with this well-established approach, specifically designed to protect the due process rights of *all* class members, simply because his clients do not want to wait for the final approval process to play out.

<u>First</u>, the proposed temporary injunction does not "extinguish" any of the Individual Merchant Plaintiffs' rights or "pull the rug out from under the Merchant Plaintiffs." (Jan. 24 Letter at 2, 5.) It merely enjoins the prosecution of injunctive relief claims pending final approval of the Class Settlement Agreement. (*See* Paragraph 24; *see also* Individual Merchant Plaintiffs' arguments to the Second Circuit in MDL 1720, discussed below at page 7.) The standard that will apply to the Court's determination of whether finally to approve the settlement will not be the "low" standard for preliminary approval but the higher standard for final approval. This fact, obfuscated by the Individual Merchant Plaintiffs' letter, exposes their unfounded assertion that this Court's granting of preliminary approval of the settlement "would deprive the Merchant Plaintiffs <u>permanently</u> of their right to seek an injunction" against American Express. (Jan. 24 Letter at 7, emphasis added.)

<u>Second</u>, for the same reasons that no rights have been or will be extinguished unless and until a full and fair final approval hearing has taken place, at this preliminary approval stage there are no due process concerns with the entry of preliminary approval. There will be a full and fair opportunity to object to and be heard in opposition to entry of final approval.

Notably, in MDL 1720, Judge Gleeson entered a preliminary approval order containing an identical temporary injunction to the one proposed in this case without holding an evidentiary hearing. Several merchants appealed Judge Gleeson's preliminary approval order and challenged the temporary injunction. The Second Circuit refused even to entertain those appeals, issuing an order stating that "briefing for this appeal is deferred until after the U.S. District Court

for the Eastern District of New York has entered an order of final approval and final judgment with respect to the settlement at issue in these appeals or has otherwise concluded these matters by entry of final judgment." (MDL 1720 Second Circuit Order dated December 10, 2012, No. 12-4671 (2d Cir.) (D.E. 83).)  Mr. Arnold himself advocated for exactly that result on behalf of the Individual Merchant Plaintiffs in a brief to the Second Circuit.  (Individual Plaintiffs' Joinder in Class Plaintiffs' Motion to Defer All Briefing in Interlocutory Appeals Until After Final Approval Order, No. 12-4671 (2d Cir.), (D.E. 60) at 6-8, attached hereto as Exhibit A.)  In that brief, Mr. Arnold and co-counsel expressly argued:

> "If the final-approval process plays out and the district court declines to grant final approval, the preliminary injunction on which this Court's jurisdiction rests will cease to exist" (*Id.* at 6-7); that
>
> "The Objectors will have ample opportunity to voice their objections to Judge Gleeson—who has only <u>preliminarily</u> approved the Settlement—and, if those objections are rejected, to appeal to this Court." (*Id.* at 7, emphasis in original); and that
>
> "The injunction simply preserves the status quo until Judge Gleeson can hear from all interested parties (including objectors) and decide whether to grant final approval." (*Id.* at 7-8.)

The same result is warranted here.[6]

  <u>Third</u>, Mr. Arnold's attempt to apply the Rule 65 standard for a preliminary injunction to the present context fares no better.  The Individual Merchant Plaintiffs cite no Second Circuit authority, and we are aware of none, where an injunction pending final approval of a class settlement agreement was denied for failure to satisfy the test for preliminary injunctions under Rule 65.[7]  Instead, the Second Circuit has directly held that courts issuing injunctions in the

---

[6] The Individual Merchant Plaintiffs twice suggest that the injunction in MDL 1720 is distinguishable from Paragraph 24, claiming that it "did not impair the rights of any litigants with pending cases." (Jan. 24 Letter at 3 and 10 n.7.)  That is simply wrong.  While Judge Gleeson's injunction pending final approval may not have impaired the Individual Merchant Plaintiffs' claim (because they had settled their damages claims against the MDL 1720 defendants before preliminary approval of the class settlement there), the Individual Merchant Plaintiffs seem to forget that the majority of class representatives in MDL 1720 fired their attorneys and challenged both the settlement agreement and the temporary injunction preventing them from pursuing their claims.  Thus, there were 10 out of 19 class representatives that had pending cases before Judge Gleeson that were subject to the injunction that Paragraph 24 parallels and whose "rights" to pursue their pending claims were thus temporarily restrained while the Court preserved its jurisdiction to consider the final approval of the settlement.

[7] The two cases Mr. Arnold cites for this proposition are inapposite—neither *UBS Financial Services., Inc. v. West Virginia University Hospitals, Inc.*, 660 F.3d 643 (2d Cir. 2011), nor *Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) involved any jurisdictional issues necessitating the "in aid of its jurisdiction" exception to the Anti-Injunction Act, neither involved

Honorable Nicholas G. Garaufis
January 31, 2014
Page 8 of 9

context of a class settlement need not make the traditional findings that are required for preliminary injunctions under Federal Rule of Civil Procedure 65.  *See In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2d Cir. 1985).[8]

Even if that standard did apply, the result would still be the same here.  If the temporary injunction is entered, the Individual Merchant Plaintiffs would only be prevented from pursuing their injunctive relief claims pending the final approval process, during which they could make whatever objections and arguments they see fit.  If their arguments are insufficient, as we believe they will be, their injunctive relief claims will be extinguished by the settlement.  If their arguments somehow were sufficient to prevent final approval, there will be no settlement and they will be free to pursue all of their claims, including their injunctive relief claims.[9]

Fourth, Mr. Arnold's argument concerning American Express's objection to preliminary approval in MDL 1720 (Jan. 24 Letter at 2-3) is a both a red herring and inaccurate.  The quote on page three of Mr. Arnold's letter omits the preceding sentence in American Express's objection which explains that Amex objected because of the MDL 1720 class plaintiffs' complete failure to adequately represent Amex's interests as a competitor of Visa and MasterCard: "Here, the patent inadequacy of Class Plaintiffs' representation of American Express' interests, and the resulting gross unfairness in the terms of the proposed release, are the kind of obvious deficiencies that should preclude preliminary approval."  (Amex Objection to Preliminary Approval of Class Settlement, Exhibit B to Jan. 24 Letter at 14.)   American Express's positions here and before Judge Gleeson are entirely consistent.

Finally, delaying the final approval fairness hearing until *after a trial on the merits* so that the Court can develop a "more fulsome understanding" (Jan. 24 Letter at 11) would likewise turn the Rule 23 approval process on its head.  Amex is settling the class's injunctive relief claims.  Part of the consideration in any class action settlement is the resolution of claims – not the trial

---

a preliminary approval motion, and neither involved a settlement.  *Sussman* concerned a political organization seeking a preliminary injunction to compel the government to allow its planned demonstration.  488 F.3d at 139.  In *UBS*, an underwriter sought an injunction to prevent arbitration in lieu of litigation.  660 F.3d at 647.

[8] *See also In re Johns-Manville Corp.*, 27 F.3d 48, 49 (2d Cir. 1994) (affirming order staying litigation against and payment by a personal injury settlement trust and stating, "We also reject the appellants' procedural objection that the Trial Courts have failed to make the findings required by Rule 65 of the Federal Rules of Civil Procedure.") (internal citations omitted); *Federated Conservationists of Westchester Cnty, Inc. v. City of Yonkers*, 117 F. Supp. 2d 371, 384 (S.D.N.Y. 2000) ("Injunctions made pursuant to the All Writs Act do not have to satisfy the traditional requirements of Fed.R.Civ.P. 65(d). Instead, all that is necessary is that the injunction be 'necessary or appropriate' to prevent the frustration of a court's previous remedial order.").

[9] Nor should the Individual Merchant Plaintiffs be heard to complain about the potential delay in pursuing their injunctive relief claims if the settlement is not finally approved.  They waited between two and five years after the class case was filed to start their actions, thereby accepting the risk that the Class would resolve its claims prior to theirs.

Honorable Nicholas G. Garaufis
January 31, 2014
Page 9 of 9

of them.  Rule 23 instructs the court to hold a hearing, not conduct a trial.  *See* Fed.R.Civ.P. 23(e)(2); *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

\* \* \*

The meaning of the Preliminary Approval Order is clear.  The Individual Merchant Plaintiffs will be enjoined from proceeding with their injunctive claims pending final approval or termination of the settlement.  Any other interpretation, or a modification to the terms of the settlement to provide otherwise, will deprive American Express of the benefit of its bargain and require American Express to terminate the agreement, preventing the Court from analyzing its fairness on a full record after proper notice to *all* members of the class.  The Individual Merchant Plaintiffs have cited no authority to support their contention that the Court cannot grant Preliminary Approval in light of this injunction.  We therefore request that the Court overrule their objection, and enter the Preliminary Approval Orders.

As mentioned at the outset of this letter, American Express finds itself in a difficult position given the requirement that it exercise its right to terminate the settlement agreement within 30 days of an objection by any Individual Merchant Plaintiff.  (*See* Paragraph 62(d).) While we believe that the Individual Merchant Plaintiffs' interpretation is untenable, we are concerned that if the Court has not ruled on preliminary approval by February 13 we will be subjected to an argument that American Express has waived its termination right, given Mr. Arnold's objections on the record at the January 14th hearing.[10]  Given the centrality of the temporary injunction contained in Paragraph 24 to the bargain that American Express struck, we cannot take the risk.  Accordingly, we will be compelled to exercise our termination right on February 13 if the Court has not by then ruled on Preliminary Approval.  We sincerely regret that we find ourselves in this procedural posture, but it is precipitated by the decision by the Individual Merchant Plaintiffs to assert their objection prematurely at the preliminary approval stage.

Respectfully submitted,

/s/ Philip C. Korologos

Philip C. Korologos

Copies to all Counsel

---

[10] If the Court grants preliminary approval and the Individual Merchant Plaintiffs object to final approval of the Class Settlement Agreement, American Express will again have a right, within 30 days of any such objection, to terminate the agreement pursuant to Paragraph 62(d).