# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| IN RE PAYMENT CARD INTERCHANGE | ) | Nos. 12-4671 (lead) |
| FEE AND MERCHANT DISCOUNT | ) | 12-4708 |
| ANTITRUST LITIGATION | ) | 12-4765 |
| | ) | |

**INDIVIDUAL PLAINTIFFS' JOINDER IN CLASS PLAINTIFFS'
MOTION TO DEFER ALL BRIEFING IN INTERLOCUTORY
APPEALS UNTIL AFTER FINAL APPROVAL ORDER**

Linda P. Nussbaum
Susan R. Schwaiger
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

Richard Alan Arnold
William J. Blechman
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000

1

Individual Plaintiffs,[1] as members of the Rule 23(b)(2) Settlement Class preliminarily certified by the district court, respectfully join in the Class Plaintiffs' Motion to Defer All Briefing in Interlocutory Appeals Until After Final Approval Order. Class Plaintiffs' motion should be granted because the Objectors' request for expedited briefing will delay the orderly completion of the final approval process and waste judicial resources.

The district court's preliminary approval of the Class Settlement Agreement has brought about a number of important reforms in the Visa and MasterCard payment systems that accrue to Individual Plaintiffs' (and other class members') benefit:

- It reforms the Visa and MasterCard no-surcharge rules, which previously had barred merchants from surcharging credit cards at the brand (*i.e.*, Visa, MasterCard) and product (*e.g.*, Visa Classic, Visa Traditional Rewards, Visa Signature, MasterCard Standard, MasterCard World, MasterCard World Elite) level. Merchants will now be able to engage in brand- or product-level surcharging of Visa and MasterCard credit cards

---

[1] The Individual Plaintiffs include: Ahold U.S.A., Inc.; Albertson's Inc.; BI-LO, LLC; Bruno's Supermarkets, Inc.; Delhaize America, Inc.; Eckerd Corporation; The Great Atlantic & Pacific Tea Company; H.E. Butt Grocery Company; Hy-Vee, Inc.; The Kroger Co.; Maxi Drug, Inc. (and doing business as Brooks Pharmacy); Meijer, Inc.; Meijer Stores Limited Partnership; Pathmark Stores, Inc.; Publix Supermarkets, Inc.; QVC, Inc.; Raley's; Rite Aid Corporation; Safeway, Inc.; SuperValu Inc.; Wakefern Food Corporation; and Walgreen Co.

1

up to certain amounts related to their acceptance costs and limitations, if any, imposed by other network cards they accept. A merchant who accepts only Visa and MasterCard credit cards can surcharge either card, or both, at the brand or product level, up to the merchant's average merchant discount rate.

- It removes the Visa and MasterCard all-outlets rules, which had required that Visa and MasterCard credit cards and debit cards accepted by a merchant at any of its stores operating under a given brand or trade name be accepted at all stores operating under all of the merchant's brands and trade names in order to obtain favorable pricing. This means, for example, that when the reforms are implemented on January 27, 2013, a merchant with stores operating under full-service and discount brands can accept Visa and/or MasterCard credit cards at stores operating under its full-service brand but decline to accept Visa and/or MasterCard credit cards at stores operating under its discount brand.

- It locks in the reforms in the so-called Durbin Amendment – which provides that merchants can discount credit, debit, cash and other payment means, set up to a $10 minimum to accept credit cards, and authorized the Federal Reserve Board to regulate debit interchange rates

2

– which otherwise would have been subject to rescission depending upon political changes in control of Congress.

- It locks in the reforms in the Justice Department Consent Decree with Visa and MasterCard – which provides that merchants can differentially discount Visa and MasterCard credit cards (at the network or product level) and debit and other payment means – which otherwise would have been subject to rescission depending upon political changes in control of the White House.

As a result of these reforms, merchants will finally have a full complement of point of sale ("POS") tools to require Visa and MasterCard (and potentially other payment networks) to compete on price for merchants' credit and debit card volume.

Under the reforms, merchants will be able to communicate with their customers about the previously hidden network and bank fees embedded in prices, state a preference for customers to pay with a particular payment means, give customers more choice in their selection of payment method, and use discounting and surcharging to steer customers to pay with a lower cost payment means. A customer who values his/her rewards more than a lower ticket price may choose to pay with his/her rewards credit card and pay a surcharge that is reasonably related to the merchant's cost of accepting that high-priced card. A customer who values a

3

lower ticket price instead of the rewards may decide instead to pay with lower-cost payment means such as a PIN debit card or a lower cost credit card. The customer can make an informed choice of payment based on price information conveyed by the merchant at the POS (and elsewhere), and customers paying with lower cost payment means can stop subsidizing the prices charged customers who pay with more expensive payment methods.

At the same time, a merchant whose credit card acceptance costs have spiraled not because of interchange rates on basic Visa or MasterCard consumer credit cards but because of premium rewards credit cards can target those high-priced cards with product-level surcharging. If Visa or MasterCard does not want to be disfavored at the POS by merchant surcharging of its credit cards or discounting of its rivals' cards, or wants to be favored at the POS by merchant discounting of its cards, then it will be incentivized to compete on price for merchant credit and debit card volume. It is that price competition for merchants' card volume which will ultimately give merchants the ability to constrain their Visa and MasterCard card acceptance costs.[2]

---

[2] This is not merely a theoretical outcome. In Australia, where the central bank required Visa and MasterCard to remove their no-surcharge rules in 2003, and American Express voluntarily agreed to do so as well, Visa, MasterCard and American Express have reportedly significantly reduced their interchange rates[2] to merchants who were willing to forego surcharging in return for an even lower (read "competitive") rate.

4

The Rule reforms in the Class Settlement were not easily achieved and represent the culmination of more than fifteen years of continuous litigation over the Visa and MasterCard systems. In 1996, Wal-Mart and several other large merchants brought a class action against Visa and MasterCard over their Rules requiring merchants to accept their credit and debit card products. The *Wal-Mart* case also challenged Visa's and MasterCard's interchange rate setting. In 1998, the United States sued Visa and MasterCard over *inter alia* their Rules barring banks issuing their cards from issuing cards of any other network. In 2004, Visa and MasterCard settled the *Wal-Mart* case based upon, among other consideration, a release that extinguished merchants' claims for *any* conduct by Visa or MasterCard (or their banks), including interchange rates and rules, at any time prior to January 1, 2004. Before Visa and MasterCard fully funded the *Wal-Mart* settlement, merchants filed the present case in 2005. This case, *In re Interchange Rate and Merchant Discount Fee Antitrust Litigation*, MDL 1720 (E.D.N.Y.), took up the unfinished business in *Wal-Mart*, principally the alleged collective setting of interchange rates and the networks' anti-steering rules.

In response to the Complaints in MDL 1720, MasterCard (2006) and Visa (2008) restructured into single entities through initial public offerings. The IPOs removed the banks from their boardrooms and the business of setting, or participating in the setting, of Visa and MasterCard interchange rates. That left the

5

Rules in need of reform, as Plaintiffs in MDL 1720 alleged that interchange rates remained artificially elevated because of the networks' anti-steering rules.

The discovery record from MDL 1720 provided Congress and the Justice Department with a substantial record on which to evaluate those Rules. Congress acted first with the Durbin Amendment in 2010. The next year, the Justice Department expanded on the Durbin Amendment in the Consent Decree with Visa and MasterCard. American Express refused to enter into the Consent Decree, thus prompting the United States to bring an antitrust case against that network because of its anticompetitive no-discrimination rule/policy. *See United States and Certain Plaintiff States v. American Express Company et al.*, Case No. 10-CV-4496 (E.D.N.Y.) The Class Settlement Agreement in MDL 1720 now extends this reform process. Combined with the Durbin Amendment and the DOJ Consent Decree, the Class Settlement provides merchants with a full complement of cardholder steering tools at the POS, including surcharging, to create incentives for Visa and MasterCard to compete on price for merchants' card volume.

Viewed against this background, the attempt by The Home Depot and other objectors in the district court ("Objectors") to short-circuit the approval process and entangle this Court in that process should be rejected.

First, the Objectors' interlocutory appeals and request for expedited briefing create a substantial risk of wasting judicial resources. If the final-approval

6

process plays out and the district court declines to grant final approval, the preliminary injunction on which this Court's jurisdiction rests will cease to exist, rendering this appeal moot. And if the district court issues final approval, it would conserve judicial resources for this Court to hear all challenges to the Class Settlement at the same time and with the benefit of the district court's reasoning.

Second, denying the Objectors' request for expedited briefing will cause no prejudice to them. The Objectors will have ample opportunity to voice their objections to Judge Gleeson—who has only *preliminarily* approved the Settlement—and, if those objections are rejected, to appeal to this Court. *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (class members who have objected to approval of a settlement at the fairness hearing and whose objections have been overruled have standing to bring an appeal).

Third, the preliminary injunction which creates jurisdiction for the Objectors' appeal is both limited and narrow and does not create any urgency requiring this Court's intervention. While the injunction temporarily enjoins class members from litigating antitrust challenges to matters covered by the Class Settlement in other courts, it does so only "pending the Court's determination of whether the Class Settlement should finally be approved" and does not limit in any way any class member's ability to challenge the provisions of the Settlement. The injunction simply preserves the status quo until Judge Gleeson can hear from all

7

interested parties (including objectors) and decide whether to grant final approval. As noted above, this Court would benefit from Judge Gleeson's reasoning before wading into the adequacy of the Settlement (assuming final approval is granted).

The final-approval process should be permitted to play out in the district court before this Court engages in appellate review of any rulings by the district court regarding the Class Settlement. For the reasons stated above, Individual Plaintiffs respectfully contend that Class Plaintiffs' motion to defer all briefing in these interlocutory appeals until after final approval should be granted.

Dated: December 6, 2012

                                            Respectfully submitted,

                                            /s/ Linda P. Nussbaum
                                            Linda P. Nussbaum
                                            Susan R. Schwaiger
                                            GRANT & EISENHOFER P.A.
                                            485 Lexington Avenue
                                            New York, NY 10017
                                            (646) 722-8500

                                            Richard Alan Arnold
                                            William J. Blechman
                                            KENNY NACHWALTER P.A.
                                            1100 Miami Center
                                            201 S. Biscayne Boulevard
                                            Miami, FL 33131
                                            (305) 373-1000

                                            On Behalf of Individual Plaintiffs